(Cuyahoga County Court of Common Pleas.)

ROBERT N. POLLOCK *v.* THE CLEVELAND SHIP BUILDING COMPANY.

---

*Rights of riparian owners on navigable streams.*—In Ohio, owners of land situate on the banks of navigable streams, are also owners of the beds of the river to the middle of the stream, subject only to the easement of the public to use the river for navigable purposes.

The building and repairing of ships is not navigation.

(Decided March, 1895.)

---

HUTCHINS, J.

This case presents some very interesting and important questions. Fortunately most of the material facts involved are not seriously in dispute, so that the questions to be here determined are largely questions of law. It will be observed, by reference to the pleadings, that aside from the question of ownership of the land described in the plaintiff's petition, the answer, in no material respects, denies the averments of the petition. It may, then, be assumed as admitted or established by the testimony:

*First*—That the defendant is a ship building company, owning a piece of land abutting on the Cuyahoga river, in the city of Cleveland, just south of the central viaduct, having a frontage on said river of about 900 feet; that on said land the defendant has buildings, derricks, tools, and other appliances for the building, constructing and repairing of water craft; that said business is extensively carried on there; that the defendant uses, in carrying on said business, from time to time, not only the water in said river in front of its said land, but also the water in front of plaintiff's land, or a portion of it, adjoining the said land of the defendant, by mooring boats therein and thereon, for the purposes of construction and repair.

*Second*—That said boats are fastened by lines to the defendant's prop-erty, but that when said crafts are moored in front of plaintiff's land, said lines or ropes pass over and along the water in front of plaintiff's land.

*Third*—That this has been, and is being done, without the consent and authority, and against the protest of plaintiff.

*Fourth*—That the defendant company has constructed in front of its said premises, a dock, extending for some distance from the shore line into the river, and that in front of the plaintiff's said land, no docks have been constructed, and that the plaintiff's said premises are unoccupied and un-used for any business, navigation or dock purposes.

The plaintiff contends that such use and occupation of the water and land fn front of his said premises is a violation of his rights as a riparian owner, and amounts to a continuing trespass, for the doing of which the defendant should be permananently enjoined. This brings us to inquire:

*First*—What rights the plaintiff has to, and in the water and space in the Cuyahoga river at that point.

At common law, water courses were separated into three classes:

1. *Private water courses*, when they were in fact, not navigable. Here, the riparian proprietor owns the water course absolutely, and any person going upon the water, for any purpose, is a trespasser.

2. *Quasi public water courses.* Under this class, come those streams which have no ebb and flow of the tide, but are of sufficient depth for float-age or boating. The bed of the stream is the subject of private owner-ship.

" The public have an easement therein, for the purpose of transporta-tion and commercial intercourse." Angell on Water Courses, 6th ed. sec-tion 535.

3. *Water courses wholly public.* Here, the public or the state owns the bed of the river. By the laws of Ohio, the great lakes belong to this, the third class. *Sloan* v. *Biemiller*, 34 Ohio St. 512.

The navigable rivers within this state, of which the Cuyahoga is one, belong to the second class above referred to; that is, they are denominated "quasi-public water courses."

One of the early cases in this state on this subject, is that of *Gravit* v. *Chambers*, 3 Ohio 496, The doctrine announced in that case is in sub-stance, as folllows:

" In Ohio, owners of lands situate on the banks of navigable streams, running through the state, are also owners of the bed of the river to the middle of the stream, as at common law."

This doctrine is supported and maintained continuously all down through the Ohio decisions, from that time to this, so far as I have been able to discover. And, as bearing directly upon this question, reference may profitably be here had to to the case of *Walker* v. *Public Works*, 16 Ohio 544, and the case of *June* v. *Purcell*, 36 Ohio St. 405.

We discover, then, that by the authorities of the Ohio decisions, the plaintiff in this case is the owner of the stream in front of his land—both land and water—to the middle of the river, and that this ownership is ab-solute, subject only to the easement or right of the public to use the river at that place, as at others, for navigation purposes.

Now, it goes without saying, that the rights of this defendant in the premises, are co-extensive with the rights of the public; they are no more and no less. This brings us to inquire: What is navigation? What are the purposes of navigation, as used by the authorities above quoted?

The public has a right to use such streams reasonably for travel and transportation. Angell on Water Courses, 541.

This use is limited to the right of passage, and such rights as reasona-

bly pertain to navigation. *Barrick* v. *Smith*, 5 Paige 137; *Commissioners* v. *Kemphell*, 26 Wend. 404; 5 Chancery Decisions, 721.

Navigation has been defined as follows:

"Navigation is a term applied to the science or business of conducting vessels or materials over navigable waters."

"Navigation is the science or art of conducting a ship from one place to another. This includes the supply of necessary implements and skillful mariners. The instruments are useless without the skillful mariners, and conversely, navigation includes two things—the supply of the instruments or organs of the ship, and the living instruments, or seamen. If either of these is wanting, there is improper navigation." 16 Am. and Eng. Ency. of Law, 272, and and authorities there cited.

The moving of a vessel in an unfinished state, from one place to another, in the course of her construction, and not for the purpose of earning money, is not navigation." The "Joshua Leviness," 9 Benedict 339.

Guided by these various definitions of what constitutes, or what pertains to navigation, reference should be made here to the business carried on by the defendant company, with a view of determining whether such business, as carried on, is within the reasonable construction of what constitutes navigation. As before indicated, the defendant is a corporation organized under the laws of Ohio, as a manufacturing corporation, engaged in the construction and repairing of steamships, vessels and other water crafts; that they have an extensive ship yard at the point in the Cuyahoga river, before indicated, where they carry on their said business; that they there manufacture vessels and ships, when on the land, and, when ready to be launched, they are floated into the Cuyahoga river, at or near the point indicated, and there the company proceed to complete and finish the ship, by the putting in of machinery, etc., etc.; that aside from this business, the company is, and was at the time of the filing of the petition in this case, extensively engaged in repairing vessels, which are moored, as before indicated, not only in front of their own land at the point in the river indicated, but also in front of the plaintiff's land, in whole or in part; that such boats which are there repaired, are brought there, generally, by the owners and crews of the various boats, and, when brought there, are turned over to the agents and employes of the company, and moored or stationed at such points as suit the convenience of the company, to conduct the repairing required in any particular ship.

I find that this business, thus carried on, is not navigation, and does not pertain to navigation within any reasonable construction of that term, and I am unable to find any authority which would justify me in holding that the defendant, in any sense, in doing the things complained of by the plaintiff herein, is engaged in navigation.

But it is contended on the part of the defendant that, because the plaintiff is not using his said land or water for dock or other purposes, he has no right to oppose the right of the defendant to occupy and use the water in front of the same, as it, the defendant, uses the same. This claim, it seems to me, is not tenable in the light of the authorities. 16 Ohio, 544.

A recent and very interesting case upon this point is the case of *Wall* v. *Harbor Co.*, 132 Penn. St. 427. This was decided by the Supreme Court of Pennsylvania at its January term, 1893. This is a very interesting and instructive case, and, it seems me, is, in reason, decisive of the case at bar, and possesses many of the same conditions and elements as the case at bar, and therefore is especially applicable. The doctrine announced briefly in this case is as follows:

"A person or corporation which makes more than a temporay mooring between high and low water mark in a navigable river, is a mere trespasser

upon the owner's right of property; and it is immaterial that the trespasser did not inconvenience the owner's approach to the shore, or that the owner had in fact made no use of the property."

The opinion of the court in that case is brief, and I will here quote it (it was delivered by Mr. Justice STERRITT, January 3, 1893):

"The defendant company has no just reason to complain of the charge of the court below. In common with the general public, defendant had a right of navigation over plaintiff's land between high and low water mark; and, when necessary to the exercise of that right, it might have made a temporary mooring; but in any use which it made beyond that, it became a mere trespasser on the right of property. That the defendant's moorage was not necessary to the exercise of the right of navigation is too clear to doubt. It is immaterial that the company defendant did not inconvenience plaintiff's approach to the shore, or that he had in fact made no use of the property; for the company's right was of navigation alone, and its conduct an invasion of plaintiff's right of property, for which it was liable in damages."

Suppose that the plaintiff in our case, instead of allowing his said land to remain unused, had built out into the river a dock similar to the one used and constructed by the defendant, and had used, or proposed to use, his said land and dock for the purpose of receiving and discharging cargoes, or what-not; does anybody suppose that the defendant company could then continue to use the water in front of said plaintiff's land as it now does? Most certainly not.

We have discovered that the plaintiff's rights in the river at this point are at all times and under all circumstances subservient to the "public easement of navigation." Hence, it follows that if the defendant in this case is exercising only this "public easement of navigation," it could continue to exercise it, although the plaintiff should dock and improve his property for the purposes indicated. The inevitable conclusion to which I have come, then, is, that the defendant, in its use and occupation of said water front, is not exercising the "public easement of navigation," but is, on the contrary, exercising some of the rights which belong to the plaintiff, and, being thus engaged, is a continuing trespasser.

A decree will, therefore, be be taken in favor of the plaintiff, perpetually restraining the defendant, as prayed for in the petition, and that the defendant pay the costs of this proceeding.

As to the second cause of action set up in the plaintiff's petition, in which he claims damages in the sum of fifteen dollars per day for the use which defendant has made of plaintiff's water front and land, I find that the plaintiff has only suffered nominal money damages, by reason of the said acts of defendant, and that, as a consequence, he is entitled to no damages on account of use and occupation, as contended for in said second cause of action. The plaintiff, in effect, admits that he lost nothing in the way of rents and profits during the time that the defendant used the land and water as aforesaid, as he was making no special use of his property at that time, but insists that, as the evidence shows that the use of his front by the defendant was worth to the defendant from $15.00 to $25.00 per day, he should, therefore, recover in the way of damages, the amount of the benefit which accrued to the defendant by such user.

I am not able to entertain this view, thus presented by counsel for plaintiff. (From *Ohio Legal News*.)

*Hoyt, Dustin & Kelly*, for plaintiff.

*Goulder & Holding*, for defendant.